WALTER W. RICHARDS, Appellant, *v.* STATE SCHOOL TAX DEPART-
MENT OF THE STATE OF DELAWARE.

(*May* 6, 1930.)

PENNEWILL, C. J., HARRINGTON and RICHARDS, J. J., sitting.
*John W. Huxley, Jr.,* for appellant.
*William H. Foulk* for the School Tax Department.
Superior Court for New Castle County. No. 176, May Term, 1928.

PENNEWILL, C. J., delivering the opinion of the court:

In this case there are two questions submitted for determination:

1.  In what year did the alleged loss actually occur?

2.  The method of computing a deduction for the depletion of appellant's interest in an oil syndicate.

In disposing of the first question it may be said, there is no doubt about the appellant's loss. It is not denied that his stock became absolutely worthless. In what year did the loss occur? The Tax Department says in 1923, because in that year a receiver was appointed for the company, and its affairs were wound

up. In the same year a new company was formed which took over all the assets of the bankrupt. The creditors of the bankrupt company received a certain number of shares in the new company, and the stockholders were given the right to subscribe to shares in the new company at one dollar per share. From these undisputed facts it may be presumed that in 1923 the original company was divested of all its assets, and its stock then became worthless. This presumption is strengthened by the further fact that in 1923 two thousand shares of the stock were sold for three dollars for the lot. These facts, in the absence of any testimony to the contrary, would reasonably warrant the conclusion that the stock owned by the appellant became worthless in 1923, and his loss was suffered in that year.

The appellant claims that his loss did not happen till 1925 because it was not till that year that the charter of the company was revoked for the non-payment of taxes. We do not think the revocation of the company's charter determined the time when its stock became worthless and when the loss occurred. There is another fact relied on by the appellant, viz.:

After the bankruptcy proceedings were instituted a new company was created, and the appellant, with other stockholders of the old company, was given the right to subscribe for shares in the new company. Because of this the appellant argues that it was reasonable to believe his stock was not entirely worthless. He did not exercise his right, but because it was given to him as a stockholder in the old company, he says he was warranted in believing that his stock had some little value while the right continued, which was after 1923.

The Court are of the opinion that these facts do not rebut the presumption arising from the bankruptcy proceedings, and the sale of a large block of stock for a nominal sum in 1923, that the stock owned by the appellant was then worthless, and that his loss happened in that year.

There is no escape from this conclusion, although it may seem unreasonable to the appellant, because it is not denied that he did

suffer the loss for which he sought allowance by the Tax Department.

In the case of *Royal Packing Co. v. Commissioner of Internal Revenue (C. C. A.)*, 22 *F.* (2d) 536, 538, the court said:

"A loss may be said to be actually sustained in a given year if, within that year, it reasonably appears that such stock has, in fact, become worthless. It is not requisite that there be a charge-off on the books of the taxpayer, and the ultimate fact of worthlessness may be shown by circumstances, as in other cases where that question is in issue. But the burden is on the taxpayer to establish the fact by reasonably convincing evidence."

And in *De Loss v. Commissioner of Internal Revenue (C. C. A.)*, 28 *F.* (2d) 803, 804, the court, in discussing the rule that a sale must be had to establish a capital gain or loss, used this language:

"Nevertheless, we think it inapplicable when the security can no longer fluctuate in value, because its value has become finally extinct. In such cases a sale is necessarily fictitious; it establishes nothing, and cannot be intended to do so, for there is nothing variable to determine."

The second question raised is whether the board erred in refusing to allow the taxpayer depletion on a unit basis of $4.50 per barrel on oil lands leased by a syndicate of which the taxpayer was a three thirty-seconds (3/32) owner. The board refused to allow depletion on a unit basis and allowed the taxpayer fifty per cent. of the net income from said lease.

The answer to this question depends upon whether the amount of recoverable oil was incapable of estimation. This seems to be admitted, but the appellant insists that the record shows the following facts that warranted allowance of depletion on a unit basis:

That the capital investment subject to depletion was $130,-000.00. That the production of the one producing well was 28,875 barrels, which applied against said capital investment gave a unit figure of $4.50 per barrel. That a second well was drilled on the property about one-half mile east of the first well, which was a dry hole and so far as the record discloses there was no likelihood that any further producing wells would be obtained on the property.

That there was a steady decrease in the production of the property from a monthly production in 1925 of about 2,100 barrels to about 700 barrels in 1927. That the actual production of said

well shrunk from a production the first year (1925) of 22,011.80 barrels to an actual production of 9,884.82 barrels in 1926, or a decrease in production of almost sixty-five per cent. That there was an estimated decrease in production, by competent oil engineers, to six thousand barrels in the third year, four thousand barrels in the fourth year, and fifteen hundred barrels in the fifth year.

The appellant contends that these facts furnish sufficient evidence on which the Tax Department could and should have allowed depletion or depreciation.

The Tax Department contends that such alleged facts, even if shown by the record, do not determine that the amount of recoverable oil was capable of estimation; and neither is it shown that the lease was unproductive because it was a new field and other productive wells might be drilled. In support of this latter contention the Department refers to a certain letter introduced in evidence by the appellant and written by one Ramsey. This letter was put in evidence, presumably, to show there was no likelihood that any further producing wells could be obtained on the property. A part of the letter is as follows:

"Whether or not any of the balance of the eighty acres will produce oil or not, it is, of course, impossible to say * * * We, of course, hope that other parts of this lease will be productive, and possibly it will be from the present producing strata or from a deeper sand."

Manifestly, the determination of the Tax Department was based largely on this particular testimony, because it decided that on account of the youth of the field, and the restricted production, it was not possible to determine with any degree of certainty the quantity of oil or gas in the field and that, therefore, the depletion should be based upon the income from the property.

In so deciding, the department claims to have followed the ruling which has been adopted by the Federal Government as the reasonable basis of determination in such cases, except that instead of allowing $27\frac{1}{2}\%$ of the net income from the property, which is usually allowed by the Federal Government, the Department in the present case allowed 50% of the net income.

Under the facts disclosed by the record, upon which alone a decision must be based, the Court cannot say the Tax Department

was wrong in its conclusion that the amount of recoverable oil from the property was incapable of estimation.

The appeal must, therefore, be dismissed.

But, while such decision is compelled by the record, the Court think that if the appellant, in filing an appeal for the year 1925, has been allowed depletion by the Federal Government on a unit basis of $4.50 per barrel for said well, it might furnish a good reason for a reconsideration of the case by the School Tax Department.

The appellant says such depletion was allowed, and it is not denied by the appellee, but it is not shown by the record, and the Court cannot consider it.

This suggestion is made, not because the action of the Federal Government is binding on the School Tax Department, but because said Department seems to regard the rulings of the Federal Government as just and proper in cases of this kind, and is inclined to follow them when the facts warrant their application.